Carr, J.
To understand correctly the instruction given by the circuit court to the jury which tried the issue of devisavit vel non, we must not take it as an abstract proposition, but (as it was given) in connection with and as applicable to the case proved in evidence. Thus it was proved, (as is clear to me from the bill of exceptions), that the whole transaction of signing and attesting the will', took place in the testator’s bed-room j and that the testator, before the witnesses subscribed, being asked if he acknowledged the will, ana wished them to attest it, answered affirmatively. These facts enter into the instruction of the court: as if it had been said to the jury, in such a case as this, where the whole transaction took place in one room, and the testator acknowledged the will,- and desired the witnesses to attest it, if you believe that his mind was sufficiently sound to know the necessity of the precautions prescribed by the act, and he could have had himself turned in bed so as to see the witnesses, or have had them moved so that he could have seen them, and he did neither, still it was an attestation in his presence. And this instruction, I strongly incline to think was correct.
Our statute (taken from 29 Car. 2. c. 3) requires, that the attestation of the witnesses shall be in the presence of the testator. The object of this law, (as the cases shew, and the counsel admitted), was correctly expounded by the judge, when he told the jury, that “ signing in the presence of the *11 testator, was to enable him to see that the persons he confided in, were those who attested, and to prevent a false paper being imposed upon them.” The phrase employed is one in common use: in presence of the testator. What, is presence ?- The opposite of absence. It may be said (I suppose) of every attestation, that it was either in the presence, or the absence of the testator. Presence seems to mean, in company with—within the view of—in the same room with. Thus, if you ask a man, were you present when such a thing happened? He will answer, “Yes; I was in the same room.” If a man be in one room, and a transaction take place in another room, of the house, it would certainly, prima facie, be considered as out of his presence. In all the cases, therefore, where an attestation out of the room of the testator has been supported, the court has extended the construction, to take in cases within the meaning, though not the strict words, of the statute. This, courts are always inclined to do; and on no subject have they gone farther than in support of the last wills of the dead, where the objection is technical, and the meaning of the statute has been substantially complied with. Thus, in Right v. Price, Doug. 243. lord Mansfield says, “ the court would lean in support, of a fair will, and not defeat it for a slip in form, where the meaning of the statute had been complied with: it was upon that principle (be adds) that Shires v. Glasscock, and other cases of,that sort, were decided.” These are the cases where the attestation was out of the room. Again, in Longchamp v. Fish, 5 Bos. & Pull. 420. the question was, whether a will executed by a blind man should have been read over to him in the presence of the witnesses; Rooke, J. says, “ there is not the least imputation of fraud in this case, but the application made to us to set aside the will, is founded on mere technical reasoning. Now, unless compelled so to do by the provisions of the statute, I never would set aside a will on mere technical reasoning.”
Lot us now examine, more particularly, the cases which have been decided on this subject.
*12 The first is the case of Shires v. Glasscock, 2 Salk. 688. Carth. 81. 1 Eq. Ca. Abr. 403. Sir George Shires, being sick in bed, made his will, and signed it, in the presence of three witnesses; but he being very ill, the witnesses withdrew into a gallery, seven yards distant, between which and the chamber where the testator lay, there was a lobby with glass doors, and the glass broken in some places. Here the witnesses subscribed the will. It was proved that the testator, from the bed where he lay, might have seen die table in the gallery, on which the witnesses subscribed, through die lobby and the broken glass window. Per Curiam, “ die statute required attesting in his presence, to prevent obtruding another will in place of die true one: it is enough if die testator might see; it is not necessary that he should actually see them signing: for, at that rate, if a man should but turn his back, or look off, it would vitiate the will. Here the signing was in the view of the testator; he might have seen it, and that was enough. So if the testator being sick should be in bed, and the curtain drawn.” This case was decided in 3 Jac. 2. about eleven years after the making of the statute; and it is the first we have on the subject. It has ever since been considered a leading case, and is constantly referred to. In Right v. Price, Buller, J. says, “ Shires v. Glasscock was decided soon after the statute passed, when the reason and meaning of the clause in question, were exactly known.” Let us then, for a moment, examine this case, and compare it with the one before us. The statute requires attestation in the presence of the testator : yet it must strike every one, that the witnesses, (in anotiier room, seven yards distant from that of the testator, and separated by a lobby) were not, strictly speaking, in his presence. If then the court had inclined to construe the statute literally, this will could not have been supported: "■but they say, the meaning of the statute was to prevent obtruding another will in place of the true one; and it is enough if the testator might see them signing: thus substituting tire possibility of seeing the subscription in the separate room, *13 for the presence required by the statute. It is upon this ground, that lord Mansfield, in the passage before cited, quotes this case as decided upon the principle, that courts lean in favour of fair wills, and will not defeat them for a slip in form, where the meaning of the statute has been complied with. In the case before us, the subscribing was in the bed-room of the testator, perhaps within a few feet of the bed, and at his request; and the judge told the jury, that if they believed he could have had himself turned in bed, so as to see the witnesses, or have had them moved into his sight, the meaning of the law was complied with. Now, to my understanding, a subscribing in the same room with the testator, and at his request, is a literal compliance with the statute; a signing in his presence. But, suppose we admit, that it was not a compliance with the very letter, as the testator’s back was to the table, and he could not turn without help; yet, surely, it was a situation far better calculated to prevent or detect imposition, than that of Sir George Shires. At any moment during the transaction, he might have said to the witnesses, stop; and to his attendants, turn me over: and, in an instant, the witnesses and the will would have been in full view, and so near as to give him some chance to distinguish a false will if such had been actually substituted: and the knowledge that he could do this, united, with the fear which guilt always feels, would give to any party meditating such fraud, a consciousness so strong of the presence and power of detection, of the testator, as to furnish substantially those guards intended by the statute. But how was it with Sir George Shires ? He lay in his bed, as we may suppose, in a position nearly horizontal; the witnesses went with the will, out of his room, through a lobby, and into another room seven yards distant: where was the difficulty of changing the will, while taking it to this room s’ and if changed, where was his chance of detecting the imposition ? Can it be supposed, that from his reclining position, looking through the broken pane of the glass door, ho -ould. at the distance of seven yards, distinguish a false will *14 from the true one ? He must be lynx-eyed indeed, if he could. Yet tins is a leading case, never since questioned or departed from.
The next case is Davy v. Smith, 3 Salk. 395. Upon a trial at bar, the question was, whether the witnesses to; a will had pursued the statute of frauds, in subscribing their names; and it was resolved, that where the testator lay ip a bed in one room, and the witnesses went through a small passage into another room, and there set their names, at a table in the middle of the room, and opposite to the door, and both that and the door of the room where the testator lay, were open, so that he might see them subscribe their names if he would, though there was no positive proof, that he did see them subscribe, yet that was a sufficient subscribing within the meaning of the statute; because it was possible, that the testator might see them subscribe; and, therefore, per curiam, if the witnesses subscribe their names in the same room where the testator lies, though the curtains of the bed are drawn close, ’tis a good subscribing within this statute; because, if ’tis in his power to see them and what is done, it shall be construed to be in his presence. This case is liable to all the remarks made on the last; die attestation was in another room, separated from the testator’s by a passage; the circumstances furnished the same facility of substituting a false will; and the situation and distance of the testator, the same difficulty of detection. Yet, because he might by possibility have seen the witnesses, the will was supported. Of the court’s remark, with respect to a subscription in the same room with the curtains drawn close, I shall speak more particularly when I come to that class of cases.
In Casson v. Dade, 1 Bro. C. C. 99. the court decides, that it is not necessary for the testator to be even in the same house with the witnesses; for there, a lady sat in her carriage in the street, and signed her will, and the witnesses took it into an attorney’s office and subscribed; and the will was supported, because it was proved, by a person in the. *15 carriage, that through the window of the office, the testatrix might see what passed within. Now, it can hardly be said, that because a person in the street may see what is passing in the room, those in the room arc therefore in her presence. Yet the court leaning strongly in support of the will, substituted sight for presence, though that sight did not furnish half the means to avoid or detect imposition, which our case affords.
The next attempt was to prevail on the courts to support wills attested out of the room of the testator, and also out of his sight; but this attempt failed; and it was decided, in many cases, that though the signing was in a room contiguous, yet the devise would be void, unless the testator were in a position, from which he might, if he chose, see the witnesses subscribe, without changing his situation. Of this class, were the cases of Eccleston v. Speke, Carth. 79. Broderick v. Broderick, 1 P. Wms. 239. Machell v. Temple, 2 Show. 288. and Doe v. Manifold, 1 Mau. Selw. 294. This last case was much relied on hy the counsel for the appellants; and lord Ellenborough was considered as haring pronounced the law to be, that no matter how near the parties might be together, in the same room, yet if the testator could not from his situation sec the attestation, it was not in liis presence. If I understood lord Ellenborough thus, I should be compelled to say, that it was an obiter dictum, not only unsupported, but contradicted, by the whole current of authority: an obiter dictum, because the case before him was not of a subscription in the same, but in a-different room: unsupported, because there is no case, or even dictum, that I have met with, which takes the position, that where the signing is in the same room, it must also he in the sight of the testator, to constitute presence. But I do not understand lord Ellenborough as the counsel did. The case before him was one in which the testator executed the will in his bed, and there being no table in that room, the witnesses went into .another, divided from it by a passage, into which the doors of both rooms opened, and they *16 subscribed the will at a table before tire fire-place of that other room, and botli doors were open. The jury found, at nisiprius, 1. that the testator did not see the witnesses attest the will; 2. that a person in the bed room might, by inclining his body and advancing his head into the passage, have seen the witnesses attest the will; 3. that the testator was not in such a situation in the room, that he might, by so inclining his body and advancing his head into the passage, have seen tire witnesses attest the will. Upon this, tire judge who tided the cause, told the jury, that he was of opinion, that the will was not duly attested; and the jury found accordingly. There was a motion to set aside the verdict, on the ground of misdirection. Lord Ellenborough’s remarks must be taken with reference to the ease before him; a case, in which the attestation was out of the room, was not seen by the testator, nqr was he in a situation from which he could see it. After speaking of the case of Casson v. Dade, which, he says, he was old enough to remember, and had gone to see the office through the window of which the lady who sat in her carriage could (as was proved) see what passed within; lord Ellenhorough says, “ in favour of attestation, it is presumed that if the testator might see, he did see. But I am afraid, that if we get beyond the rule which requires that the witnesses should be actually within the reach of the organs of sight, we shall be giving effect to an attestation out of the devisor’s presence; as to which the rule is, that where the devisor cannot by possibility see the act doing, that is out of his presence.” Now, all this is entirely correct, as applied to the case before the court, a subscribing in another room; and to this case alone, the chief justice meant to apply it. The case he cites, and the language he uses, shew, that a signing in the same room was not in his mind at all.
Let us now see, what the judges have said of the effect of a subscription, where the testator and the witnesses are together in the same room. And here it is worthy of remark, that in the lapse of one hundred and fifty years, since the *17 making of the statute, 1 can find (in all the books I have ° ... . searched) but two cases, in which a dispute has arisen about the due attestation of a will, where the signing was in the same room: indeed, I may say but one case, for in Tod v. The Earl of Winchelsea, (which I shall presently cite more particularly), the weight of evidence was, that the attestation was in another room. I apprehend, that, in the making of wills, it happens, in nine cases out of ten, that the witnesses attest in the same room with the testator: how shall we account, then, for the fact, that we find upon record, so few cases in which it has been questioned whether such attestation was sufficient? I answer, upon the ground of the general opinion, that a signing in the same room was a signing in the presence of the testator; and cut off all inquiry 1 about vision, or the relative position of the parties.
In Longford v. Eyre, 1 P. Wms. 740. the lady Cluterbuck having a power to devise certain lands during coverture, made her will, to which there were four witnesses: one was beyond sea; two swore, that they saw the will executed, and subscribed the same in the presence of the testatrix; the third swore, that he subscribed the will, as a witness, in the same room with, and at the request of the testatrix. Lord Cowper doubted as to the execution of the will, but would declare no opinion till farther application. It came on again before lord Macclesfield; and it was pressed upon him, that this third witness signing in the same room, was necessarily a signing in the presence of the testatrix. To this argument he replied, “ that the bare subscribing the will by the witnesses in the same room, did not necessarily imply it to be in the testator’s presence : for it might be in a corner of the room, in a clandestine, fraudulent way; and then it would not be a subscribing by the witness, in the testator’s presence, merely because in the same room; but (he adds) here, it being sworn by the witness, that he subscribed the will at the request of the testatrix, and in the same room, this could not be fraudulent, and was therefore well enough.”
*18 From this opinion, I think we may fairly draw two conclusions. The first is, that a signing in the same room, is (as a general proposition) a signing in the presence, hut ceases to be so, if it be clandestinely and fraudulently done. Powell in his treatise on Devises (p. 168.) shews, that he so understands the case: Speaking of the conclusion to be drawn from it, he says, “ And a devise, even if it be executed in the room where tire testator is, and may see it if he please, will, if the subscribing be done in a clandestine and secret manner, be void notwithstanding.” Roberts also in his treatise on Wills, (p. 129.) from this same case, and the case of Right v. Price, where the testator was insensible, draws this conclusion: “ the mere corporal presence, however, of the testator, unless his mind and faculties also are present, will not satisfy the statute on this point; for there must be a mental knowledge of the fact; so that, as a ' subscription clandestinely made in a corner of the same room with the testator, was not, on this account-, a sufficient attestation, so neither would such subscription in the same room suffice, if the percipience and intelligence of the testator were gone, so as to constitute it an act done without his knowledge.” The second conclusion from the opinion of lord Macclesfield, is, that where the signing is at “ the request of the testator, and in the same room, it could not be fraudulent, and therefore is good.” Now, in our case, the witnesses signed at the request of the testator, and in the same room; and the instruction of the judge is predicated upon these facts.
In the cases of Shires v. Glasscock, and Davy v. Smith, (the two earliest) the court laid it down, that if the witnesses subscribe their names in the same room where the testator is in bed, though the curtains of the bed be drawn close, it is a good subscribing; because, if it is in his power to see them and what is done, it shall be construed to he in his presence. The point to be sure, was not directly before the court; but yet it shews their opinion, and has been constantly quoted since as law. The proposition is laid down broadly, *19 liiat a signing in the room, is a signing in the presence, though die testator he in bed and the curtains closely drawn. Why ? because it is taken for granted, that it is in his power to see what passes in the room. We are not told, whether the testator had the strength to raise himself in the bed, or to put by the curtain with his own hand : this makes no term in the proposition. Whether he could raise the curtain, without aid, or with the aid of others, it was equally in his power to got it out of the way, and see what was doing ; and if, having this power, he lay still, the signing was in his presence. So, in our case, die witnesses being with the will in the testator’s bed-room, and there at his request signing, signed in his presence; because he had the power of seeing them, either by being turned over, or removing them into his sight; and if, having this power, he did not choose to exercise it, the signing was not the less in his presence.
The last case I shall cite, is Tod v. The Earl of Winchelsea, Car. & Payne, 488. decided in 1826. The question was, whether the will of the duke of Roxburgh was duly attested under the statute of frauds. One of the subscribing witnesses was dead. Another stated, that after the duke had signed the will, as far as he recollected, he took leave of him, and himself with the other witnesses, and the writer, went into an adjoining room called the writing-room, the door between the rooms remaining open; and that the witnesses signed their names on a table; but what sort of a table, or where it stood, he did not remember, nor could he say whether the duke could see them when they signed,. The deposition of the other subscribing witness stated, that he believed the will was attested in the room where the duke was, but that he was not positive. It, however, appeared, that when the witness had giyen a former deposition on this subject, he then thought the will was attested in the adjoining room. It was proved, that as the duke lay in bed, he could only see one end of the writing-room; and that there were three tables in it, one in the middle of the room which ss he lay in bed ho could not see, another which he could *20 see, and a third which was moveable, running on castors, and which might be wheeled into a part of the room, from whence he might see it in bed. Chief justice Abbott told the jury, “By the statute of king Charles II. it is required, that the witnesses who attest a will of lands, shall do so in the presence of the testator; and you have to consider, whether they did so in this case. As to what shall be held to be in the presence of'the party; it cannot be necessary, that it should be in his sight, as the testator might have lost his sight, and in such cases other circumstances have been held to be sufficient. The rule to be drawn from all the decisions, which I mean to leave to you as die law, is this: was or was not the will attested by the witnesses in such a place, that the duke of Roxburgh might have seen what they were doing ? I don’t say, that it is necessary that you should be satisfied, that he did se.e them. If it were attested in the room in which he was, it is clear, upon the cases, that that is sufficient; if a table was brought to the door, he might have seen; but if it was done on the table in the middle of the room, he could not. As to the supposition that he got out of bed, I think there is no foundation for that, because he was assisted to rise in his bed, and was exhausted by the writing his name the first time. One witness says the will was attested in the room; but Sir Coutts Trotter thinks otherwise; and the former, on another examination, said he thought the will was attested in the next room. But it does not follow that the duke could not see the attestation, because it was in the adjoining room. If it was executed at the pier table, .he might have seen it; or, if the moveable table was placed in one part of the room, he might also have seen it. You will, therefore, have to say, whether the will was attested in the bed-room; if so, there is no doubt; but if you think it •was attested in the other room, whether it was attested in such part of that room, that the testator might have seen the witnesses attest it: in either of those cases, the plaintiffs are entitled to a verdict. But if you think otherwise, I am of opinion that in point of law, you ought to find for the defen *21 dants.” If this case be authority it completely settles the J . question. The case brought directly before the court, the distinction between an attestation, in the same room, and in an adjoining room: and the judge treats it clearly, telling the jury, that if they found the signing in the same room, it was clear upon the cases, that that was sufficient; and again, if the will was attested in the bed-chamber, there could be no doubt; but if not, then you must enquire, whether the testator could see the attestation. By this case, the instruction of the judge, in the case before us, is amply justified. And this, I think, is the true rule, both upon reason and authority. When no fraud is imputed, a signing in the room gives all the safety which the statute intended; and the question of fraud is wholly for the jury; where that intervenes it will vitiate, even though the will be executed, under the very eye of the testator. In the case before us, the objection is technical merely; and the courts have always leaned against such, in favour of fair wills. If we, departing from this course, require a strict and literal compliance with the statute, and say that every attestation not in the range of vision as the testator lay, shall be out of his presence, we shall give rise to a thousand perplexing questions, and much oftener disappoint fair wills, than we shall guard the testator from imposition. I think the decree should be affirmed.
Green, J.
The proposition involved in the instruction given by the circuit court in this case, is, that if a testator, lying sick in bed, and so feeble as not to be able to turn his body or head without assistance, be raised up, and setting on his bed-side, signs his will upon a table at the side of the bed; and, after requesting the attesting witnesses to subscribe it as witnesses, be laid down in the bod, with'his back to the table, so that, without turning his body or head he cannot see the witnesses at, or the will upon, the table; and the witnesses, under these circumstances subscribe the will on the table; the will is duly attested and subscribed by the witnesses in the presence of the testator, provided he was in *22 a stale of mind to know the necessity of the precautions re- . . . x quired by the statute in the attestation of wills, and could }jave }la¿ himself turned in his bed, or had the witnesses brought within his view, so as to have seen the act of subscribing.
Courts of justice have always, and very properly, leaned strongly in favour of the validity of wills fairly made, and when there is n'o imputation of fraud. But there is a limit prescribed by positive law, beyond which we cannot go. The witnesses must subscribe in the presence of the testator, in some sense.
The cases upon this subject (most of which have been noticed by judge Carr) have, accordingly, gone to this extent, that where the testator and the witnesses are together, for the purpose, as they usually are, of transacting the business of attesting the will, and so their attention specially called to that object; if they be in such a situation, that the testator may, if he pleases, by the exertion of his own volition and physical powers, without materally changing his position with respect to place, and without the assistance of others, see the witnesses subscribe; that is a subscribing in his presence. And, perhaps, the cases justify us in saying, that this is, under such circumstances, a presumption or conclusion of law, against which no evidence will be received. When they are in the same room, the prima facie presumption is, that the testator might see the attestation and subscription, without extraneous assistance; and, without evidence to the contrary, this would be taken for granted. But this is not necessarily so. In the case of Tod v. Winchelsea, in which chief justice Abbott instructed the jury, that if the will was subscribed by the witnesses in the room, where the testator was, there was no doubt of its due execution, diere was no evidence to repel the presumption. In that case, too, the testator might have had the moveable table in the room adjoining that in which he was, the door being open, moved with the witnesses within his view, and die will there subscribed by them. And in the case of Doe v. Manifold, *23 the testator might have caused himself to be removed to the door oí the room in which he was, and then bending forward his body, and advancing his head into the passage, he could have seen the witnesses subscribing in the adjoin-mg room. Yet this capacity (like the capacity of the testator relied on in our case) to have the table and witnesses removed into the view of the testator, and the testator himself brought into such a situation, without leaving the room in which he was, as that he might see the witnesses subscribing in another room, were not held to bring these cases within the statute. Nor is there any case which intimates, that, where the testator is in such a situation, that he cannot see the subscription by the witnesses, by means of his own power and volition, as above mentioned, it is sufficient to satisfy the requisition of the statute, that he might cause himself, or the witnesses, to be placed in such a situation as that he might see their attestation.
As to the case of a blind man: whilst vision and a reasonable degree of proximity constitute presence, in the case of one who has the faculty of vision, some other criterion must be adopted in the case of a blind man, one circumstance of which must be proximity; but what other circumstances must concur with that, is not settled by authority, and must be left to be decided when the case occurs.
I think the decree should be reversed, and the cause remanded, to have a new trial of the issue of devisamt veil non, upon which no such instruction is to be again given.
Coalter, J.
The object of the law, in requiring a will to be attested in the presence of the testator, is to prevent a surreptitious will being substituted and imposed on him for the will he intends to publish. To effect this object, the witnesses and the will must both be in the presence of the testator; he ought to see, or at least be able to see, both. He may, it is true, turn away his eyes, so as not to see what is doing, or he may look on, the whole time. It will rarely happen, that the witnesses engaged in the attestation, are at *24 the same time watching the testator, to see whether he is looking at them, so as to establish the fact that he saw them attest; and therefore the most that they can be required to prove, is, that he was so present to them, and they to him, as that he might, and therefore probably did, see the atiesta» tion. Nothing less than this, it seems to me, can satisfy the words and intention of the statute.
Suppose the witnesses retire to a table standing behind a desk in the testator’s chamber,'where he lying sick in his bed, makes his will; and over which desk he can even see the heads of the witnesses, but neither the table, the will, nor the act of attestation; is this a good will within the act ? and will it be considered as duly attested, unless it can be shewn, that they retired there for fraudulent purposes? Is the power to require the witnesses to come from behind the desk and expose their acts to view, though no such requisition be made, equivalent to the power of actually seeing them if he choose to cast his eyes on the scene of action ?
Suppose there is a folding screen, impervious to the sight, round the foot or side of the bed, and the witnesses retire behind that out of his view; is the power to direct it to be folded or shut up, so as to expose tire table and witnesses to view, to be substituted for that power to supervise the transaction, which the simple act of casting his eyes on the spot affords ? must it be proved, that they retired behind the screen, in order to be out of view and for fraudulent purposes ?
Suppose the table at which the witnesses subscribe, be just within the door of an adjoining room, a few feet from the testator’s bed, who has his face to it, and when open, can as plainly see the table, as if it were in his chamber, or more so, there being more light there than is agreeable or proper in the bed-room of the sick; but in order to exclude this disagreeable light from the sick bed, the door is usually kept shut; and, without any real or apparent intention of fraud, it is actually shut at the time of attestation: is the power to require it to be opened, to be substituted for the power to see if the party had chosen to cast his eye that way ?
*25 Could it be said of either of these cases, that as he might have seen, it is fairly to be presumed that he did see, and that consequently no imposition was practised ?
The object of the law being to prevent frauds, it prescribes the forms which are to be pursued, and which prima, facie are sufficient to guard against fraud. All attestations not coming up to these requisites, may be fraudulent, and are in fact so considered in law, without proof of actual fraud; and no proof of actual fairness can avail or supply die requisites of the law. The most credible witnesses who ever lived may prove that they saw the will subscribed, heard it read to the testator and approved of by him; that he requested them to attest; that they all took hold of the will, carried it into another room, having received it from the hands of the testator; that they all continued to hold it, until each attested it; and all returned with it and delivered it to the testator again: yet it is no will of lands unless he could see them attest. Say, that they attested it in the doorway, where their acts could have been seen, had not the door been closed to shut out offensive light from the sick bed ,- it is no will. According to all the cases, to make it an attestation in the presence, the door must be open : no case goes so far as to affirm, that if the testator had had his suspicions awakened, and could have commanded the door to be opened, it is the same thing as if it had been opened.
It is not to be supposed, that testators, especially in their last illness, are suspicious of those around them, or that they are in a frame of mind, if they are of body, to guard, by any unusual effort, against frauds. The law undertakes to guard them. They may still be defrauded. But, if the attestation be according to law, the fraud must be proved; if not, the law avoids the will, as though actual fraud were proved, and no proof of fairness can make it good.
The opinion of die judge below, in this case, makes this a good will, although the jury might believe, not only that the testator did not actually see the attestation, but that he could not see it, any more than if it had been in another *26 room with the door shut. Had his suspicions been aroused, and had he been turned, it is true he might have seen; and so he might, on being turned over, had the attestation been in an adjoining room, and in a part of it which would have been visible to him when he was so turned over. If the attestation had been in an adjoining room, at a table visible from the bed, had the testator been turned over, but not visible to him as he lay unable to turn; this (as, I think, all the cases shew) would not have been a good attestation. The power to have himself turned, and the power to see, if turned, is the same in both cases. Yet, in the one case, it is said to be a will, in the other, not so. A testator, not too ill to get up, acknowledges his will, lying on his bed: he continues to lie there, and his will is attested in an adjoining room: he can, by getting up, and sitting on his bed side, and leaning forward, see what is done, and is fully able to do so, without assistance, or much bodily pain : but he omits to do it, and the law protects him against any will made in such a situation. But the man who is laid with his back to the table, when his will is attested, and can no more see it, or what is doing, than if he was held there by superior force, unless he calls for assistance, is not protected by the law !
It is true the cases say, that proof of actual seeing is not necessary, the presence being such that he can see if he will; but where is the case which says, that it is a good attestation notwithstanding proof on the other side, that he hot only did not see, but could not without assistance, any more than he could see through a panel door what was doing behind it, and which he was unable to open without assistance ?
If the doctrine contended for be tenable, why shall not a will, executed in an adjoining room, be good, where the testator could direct the table to be set out within his view whereat to attest it Pi''Why not, if attested in an obscure corner in the same room, because he might have ordered it to be done in a part of the room where he could see what was doing ? The law is not that it shall be attested in his *27 iiiesence,»/ he thinks it proper to superintend the act him-r , . , r r , 1 fl. ,. , , sell, otherwise he may trust to the honesty oí his mends and the witnesses, to see for him that no fraud is done: No; the law requires him to be present himself, body and mind. If he can, by turning his eye, see what is doing, he will be presumed to have seen it, and no farther proof that he did see. is necessary; but if interposing walls or other obstructions, render it doubtful whether he could see or not, the power to see must be proved and made apparent; as, that a door or window was open, (not that it might have been opened, if requested), and that his position in bed was such, (not might have been such had he desired to be raised or turned), as that he had it in his power, by simply looking on, to see. This is enough, and you need not prove that he actually did see.
I can see no magic in the four walls of the testator’s bed chamber, which shall make him more present at an act of attestation, which in reality he cannot see without calling for assistance, than he is at a similar act performed a few feet from him, which he can see, even without assistance, by a slight change in his position. Neither the law nor the decisions under it, it seems to me, contemplate any such fictitious presence. If the act be done in the same room, prima facie he is really present; that is, he can really see; and„ nothing further being shewn, he is presumed to have supervised the act. But if it is in a remote corner, though within the four walls, it must be shewn that he was so situated, in point of position and light, as that he could see, or it is deemed in law fraudulent and void, without proof of actual intended fraud. This, I think, is the sum and substance of the law, and all the decisions; and that to go beyond it-,’'i,< dangerous.
I think the instruction given to the jury was wrong.
Cabell, J.
The statute makes it essential to the validity of a will of lands, that it shall be attested by two or more witnesses, in the presence of the testator. The object of this requisition, is to enable the testator to see, that those *28 who attest the will are the persons in whom he confides, and to prevent a false paper from being surreptitiously imposed on the witnesses. Presence is not defined in the statute; but a due attention to the object of the law in requiring it, will lead us to its true meaning. It cannot be synonimous with being in the same room with the testator: for a man may be so situated, as to see what is passing in another room as accurately as if it were in the same room; and he may be so situated, as to be as incapable of seeing what is transacting in the same room, as if it were in a different room. The object of the law will be completely effected, and can only be effected, by the testator’s being in such a situation in relation to the- will and the witnesses, that he may, if he will, see, from that situation, both tifie will and the witnesses in the act of attestation. This capacity in the testator is, unquestionably, the test of presence, in all cases of attestation out of the room in which the testator ma.y be: for all the cases shew, that an attestation out of the room of the testator, is held to he in his presence, if he might see it, and not in his presence, if he could not see it. Now, as the reason of the law in requiring an attestation to be in the presence of the testator, is precisely the same, whether that attestation be in the. same room, or in a different room, the law will apply the same test of presence to both cases. An attestation, therefore, in the same room with the testator, will, as in the case of an attestation in a different room, be held to be in his presence or not in his presence, according to the capacity or want of capacity in the testator to supervise the transaction. There is, however, one important difference between an attestation in the same room, and one not in the same room with the testator: in the absence of all proof, a man is presumed to be able to see what is done in the same room with him, and to be unable to see what is done in a different room. An attestation, therefore, in the same room, is prima facie good; an attestation in a different room, is prima facie bad. But this presumption must yield to positive proof. An attestation, therefore, out of the room of the *29 testator, but proved to be within the scone of his vision, be- ’ 1 , 1 . . comes good, as being in his presence; and an attestation in the same room, but proved to be out of the scope of his vision, becomes bad, as not being in his presence. And this is, as I take it, the substance of all the authorities.
I am, therefore, of opinion, that the instruction of the circuit court to the jury, was improper; for, according to the case, as stated, the testator is supposed to have been in such a situation, that he could not see the attestation, since he lay in his bed, with his face turned from the witnesses, and was so weak as to he unable to turn his face towards them. The fact, that the testator might have caused himself to be turned over in his bed by his attendants, or that he might have caused the witnesses to take a position in the room where he might have seen them, (without, however, doing either), is not entitled to any weight. A power of that sort exists in every case: in every case, the testator may cause his own situation, or that of the witnesses, to he so changed as that he may see the attestation. Such a power was expressly held to be insufficient in the eases cited at the bar, of Doe v. Manifold, and Tod v. The Earl of Winchelsea. A contrary decision would have the effect of substituting the confidence of the testator in his attendants and the witnesses, for that presence of the testator which the law requires. It. is going far enough to say, that the law may he satisfied, by the testator being in such a situation, that he may, from that situation, and without the aid of others, supervise the attestation.
Brooke, President.
To arrive at a correct decision m this case, the first object is to ascertain the true construction of our statute, taken from the british statute of 29 Car. 2. and to have a correct understanding of the cases decided on that statute by the english judges. The terms of both statutes require, that the attestation should be in the presence of the testator. What constitutes presence, I think, is cotrcctly settled by the adjudicated cases. Whore the witnesses *30 are cailed upon by the testator to witness his will, and are _ r J 7 in the same room with him for that purpose, they are mutually jn die presence of each other, according to the terms of the statute. In such case, he has all the control over the attestation, intended by1 the statute; and to invalidate the will, fraud or a clandestine attestation of it, must be proved; as, (in one of the cases), a secret attestation in another comer of the room. The statute protects both the testator and the witnesses from imposition: he generally selects those that he most confides in, to witness his will: and if the terms of the statute be complied with, fraud, on the one or the other, must be proved, to invalidate it. Under such circumstances, in the absence of any charge of fraud, a blind man’s will may be well attested. And hence it is said, that it is not necessary to prove, that the testator did actually see the attestation of his will, if he might see it. How might see it ? not by his own individual powers, (for that is not said, either in the statute, or in the cases where the attestation is in the actual presence of the testator), but by the aid of others, if necessary. The witnesses being in his actual presence, he possesses all the other powers of controlling the attestation; and if his confidence in them be such, he may turn his back upon them, and dispense with the controlling power of sight, if he choose. The terms of the statute being complied with, the witnesses being actually in his presence, that circumstance is a sufficient control over them, or the statute in words would have required more. It might, in terms, have required, that he should actually see them, or of himself have the power to see them; but this would have rendered it impossible-for a blind man to make a will.
It is admitted, that it need not be proved, that the testator actually saw the attestation of the will, if he had the power to see it; and that he may dispense with this portion of his controlling influence, and turn his back upon the witnesses when they attest the will. This admission must be on the principle, that his actual presence and confidence in the witnesses supply the place of actual vision, in a case in which *31 the terms of the statute are complied with; it cannot depend on his own physical power to see the witnesses attest the will. Such a position would open a field of controversy, in which there would be no sure means of ascertaining the fact. If his vision were defective, as in age or extreme sickness is often the case, and he obliged to resort to artificial means to aid his sight, it could not be said, that he had the power within himself to see the attestation. Such a requirement would lead to endless controversy: it would be necessary to ascertain, with precision, the distance to which his vision extended, and the degree of light requisite; and, if he might have used glasses, and did not use them, it might be said, that he had not the power to see without the aid of others. In the case before us, if the testator had lost his confidence in the witnesses, and was not satisfied with the control of his presence, he might have been turned over by the aid of others, though without it he could not turn himself; as, in the case in which a testator could not see without glasses, he might with the aid of others get them, though physically unable himself to obtain them.
All the cases in which the attestation is in the same room, in the presence of the testator, and in which no fraud is charged, proceed, if I understand them, on this course of reasoning. The terms of the statute being complied with, in every particular, to invalidate the will, fraud must be charged and proved. In the last case that I have seen, Tod v. The Earl of Winchelsea, chief justice Abbott said, in charging the jury, “ as to what shall be held to be in the presence of the party, it cannot be necessary that it should be in his sight, as the testator might have lost his sight, and in such cases other circumstances have been held to be sufficient.” The circumstances, that the blind man had dictated the will, and when it was read to him, directed attestation to be made; it being attested in the same room, in his presence, and the terms of the statute being complied with, though he had lost the controlling power of sight; and no fraud being alledged; have been held sufficient. Nor is there any thing, *32 *n ^16 cases *n w^ich the attestation of the witnesses was in another room: in those cases, the controlling power of actual vision of the attestation by the testator, is considered as equivalent to the influence of his actual presence in the other eases. In the cases, in which the attestation is in another room, not in the actual presence of the testator, he is considered as constructively present, because he exercises a control equivalent to that of actual presence, by actually seeing .the attestation, as far as that can be presumed, or having the power within himself to see it without the aid of others. And a blind man, in such case, cannot make a will, whatever may be done to inform him of what is going on.
In the first cases, the presence of the witnesses for the purpose of attesting the will, in the same room, and their actual attestation there, is sufficient, unless fraud be charged. In the second, where the attestation is in another room, the testator must have actual vision, or the power to have it, without the aid of others, or the spirit of the statute is not complied with. In such case, it is important, that he should have the power to see within himself, because otherwise his control over the attestation would be wanted; to go farther, and to admit, that the power to see the attestation of the witnesses made in another room by the aid of others, would be sufficient, (as in the case of actual presence in the same room), would open as wide a field for controversy, as the requisition of a power in the testator himself without aid from others, to see the attestation, where it is made in his actual presence in the same room; which has been before remarked on. If, in the case of attestation in another room, the power of the testator by the aid of others, to" see it, was admitted; the witnesses not being in bis actual presence, could not know, that he could have aid; nor could others, in another room, intending to palm a false will upon him, know that such aid was within his power. His control over the attestation would be gone, and the statute defeated in its letter and spirit. The letter of the statute is complied with, by the control, which actual presence and the power to see by the aid *33 of others known to the witnesses, gives to the testator; its spirit is complied with, when the testator, though in another room, and not in the presence of the witnesses, is known to have the power within himself to overlook the attestation, without the aid of others, the extent of which the witnesses and others, in another-room, cannot be accurately apprised of.
But it may be said, that, in the case before us, the fraud comes out in the fact, that the testator, though he could not turn himself in his bed, so as to see the attestation of the will, neither required or was assisted by others to turn him. Unless he was incompetent, from mental infirmity, to ask for aid, if he wished it, (which is not pretended), it is nothing more than the case in which the testator turned his back upon the attestation, which was said to be of no importance. If ho had asked to be turned over, or that the witnesses should change their position, that he might see the attestation, and either had been refused, and the will attested behind his back, it would have been a clandestine attestation, and the will invalid. But nothing of the sort is pretended. He possessed a mind competent to make a will, in all respects, and exercised every control over the attestation of it, except the controlling power of actual sight of it, which is not required by the statute, either in its terms or in its spirit.
For authority for the distinction I take, between the cases in which the attestation is in the actual presence of the testator, and those in which the attestation is by construction in his presence, T refer to the cases already cited by judge Carr. Nor will I repeat the instruction of the circuit court to the jury : it must be taken in relation to the facts stated in the hill of exceptions; and if so, it was wrong on the principle contended for; it ought to have gone further; it ought to have informed the jury, that though they might find upon the evidence, that the testator had the power of himself to turn him towards the witnesses, yet as his sight was dim, and the light bad, it ought to he proved, that he could, from his actual position, of his own accord, have seen *34 the attestation: which would not have been more, than what . _ .... TX seems to be required by a majority ox the court. Upon a sound construction of the statute, and also upon the adjudged cases, I think the instruction of the circuit court was correct, and that the decree ought to be affirmed.
By the majority of the court, Decree reversed.