Daniel, J.
Concurring, as I do, in the opinion expressed by the judge of the Circuit court, that the credit of the witnesses to the execution of the will has not been successfully assailed, I do not see that any question arises as to whether the requirements of the Code, in respect to the signature of the will and the acknowledgment on the part of the testator, have been fully complied with. Nor can I see that the testimony presents any doubt as to the capacity of the testator to make a will. In the view which I have taken of the testimony, the only question demanding the serious consideration of this court is, whether or not the will has been duly attested by the witnesses in the presence of the testator.'
The witness Arlington, on his examination in chief, *127 stated that he was satisfied that he subscribed his name as a witness in the presence of the testator; that at first he had thought he had not; but since he had made an examination of the house and of the bed on which the testator was lying, he was satisfied that the testator could have seen him if he had looked; though he did not know whether the testator looked or not; that he subscribed his name as a witness at the request of the testator, and in the presence of the other subscribing witnesses; and that the testator acknowledged the paper as his last will and testament in his (the witness’s) presence and in the presence of the other witnesses.
On his cross examination, he gave a very minute description of the bed on which the testator lay; of his position in the bed; of the desk on which the will was written; and of the relative situations of the testator, the witnesses and the will, during the ti'ans-action of the attestation. He stated that there were two rooms to the house; that the testator was lying in one room, and that the will was attested in the other; that there was a door in the partition wall of the two rooms, (which door, it was shown by another witness, was some three feet in width,) and that the door was open; that the testator was lying on his back with his face upwards, in a trundle bed, with his head raised by three pillows; that the bedstead was ten or twelve inches in height, and the bed on it of the ordinary size for such a bedstead; that the will was subscribed by the witnesses upon a secretary, which was about or nearly as high as a man’s breast; that a straight line drawn from the testator’s head to the secretary would pass through the open door, so that the testator from where he was lying and the witnesses from where they were whilst attesting the will, might mutually have seen each other, if they had chosen to look; that the testator might readily See the secretary and the wit *128 nesses, by simply turning Ms head; and that the testator had sufficient strength to have changed his position - in the bed or to have risen from it, if he had pleased to do so; that he had been in fact walking about in the porch about ten minutes before the execution of the will, and that he walked about in one of the rooms after the will was attested.
On further cross examination, he stated that at the time of subscribing their names, the backs of the witnesses were turned to the testator, and he was satisfied that the testator could not see the writing hands of . either of the witnesses as they severally subscribed their names; but could not say whether the testator eould or could not see the will when “ witnessed by the witnesses.” In reply to a question whether the testator had requested him and the other witnesses to attest the paper as his last will and testament, he answered, “He requested me to attest his will and Dr. Harmanson ; I can’t say as to Savage. We were all standing round the bed, and he told us to go and witness his will.” He also stated that he subscribed the name of Savage to the will, by his request, and in his presence. And in reply to a question whether the testator offered to go with the witnesses, when they left the room to attest the will, he answered, “ Hot that I recollect; the doctor told him to lie still.”
The witness Savage stated, in substance, that after the testator had acknowledged the will, he requested all the persons present, viz: himself, (the witness,) Aldington and Harmanson, without naming them in particular, to witness it; and that they did witness it in the manner and under the circumstances detailed by Arlington. That his name was subscribed for him by Arlington, in his presence and by his request, and that he then made his mark to it. That he thus witnessed it in the presence of the other witnesses, and that he saw the other witnesses, Arlington and Harmanson, *129 subscribe their names severally as witnesses. That all of them witnessed the will on the secretary nearly about the same place, and as nearly as could be at the same time. That the door of the two rooms remained open during the attestation; that he could have seen the testator from the place he occupied whilst attesting, if he had been so minded; and that the’testator could have seen him, without doing more than turning his head in the bed. He further stated, that when the witnesses were about to leave the room for the purpose of attesting the will, the testator raised himself up, as if about to go into the other room with the witnesses; but that he again resumed his position in the bed on the doctor’s telling him that he did not wish him to get up, and that he wanted to get him into a perspiration, and to get him to sleep. Hr. Harmanson, the other subscribing witness, who attended the testator in his last illness as his physician, stated in substance, that just before attesting the will he took it in his hand and asked the testator if it was his last will and testament? To which the testator replied, that it was. That Arlington then asked the testator if he acknowledged the paper as his will? To which he replied, that he did. That there being no writing desk or table in the room where the testator was lying, he stepped into the adjoining room, carrying the will in his hand, and accompanied by Arlington, and as he thought, Savage, and there signed the will, or witnessed it, on a secretary or bureau, having first laid the will upon it; that he then gave the pen to Arlington, and returned to the room where the testator was lying, leaving Arlington, and, as he believed, Savage in the room, with the will in their possession ; that he could not recollect whether the names of Savage and Arlington were subscribed to the will when he attested or not, and that he could not undertake to state positively whether they subscribed *130 their names whilst he was in the room or not; that he was much occupied with his patient, and desirous of returning to him as soon as he could, after subscribing his name as a witness; and that he did not see either Arlington or Savage move the will from the position it occupied on the secretary at the time he subscribed his name; that he thought the door between the rooms was open; that the testator, when he left the room in which he was, was lying on the trundle bed with his face up and his head elevated by three or four pillows and a bolster; that the secretary was most probably about four feet high, four or five feet long, and about two feet broad; that the secretary was so placed in reference to the door and the position of the testator in bed, that the testator might, by simply turning his head, see through the open door about one half in length of the secretary; that it was near the middle of the half that was thus exposed to the testator’s view, at which he signed his name as a witness, and that his person could not conceal from the testator the whole of that portion which would otherwise be so exposed to testator’s view; that he subscribed his name to the will as it was lying on the top of the secretary or bureau, with his back to the testator; that the testator might have seen the whole . of his person whilst he was so attesting the will, with the exception of his forearm and writing hand, which he could not see; and that he did not think that the testator could see the will whilst he was in the act of subscribing his name as a witness.
The distance, from the trundle bed where the testator was lying to the desk or bureau where the will was attested, is represented by this witness as from fifteen to twenty feet, and by Arlington as sixteen or seventeen feet.
Two other witnesses, Hannon, on the part of the propounders of the will, and White, on the part of *131 the contestant, were examined, each of whom gave the position and dimensions of the two rooms, the location of the door, its size, and its distance from the ■ supposed position of the bed at the time of the transaction, and, from the desk. I do not think, however, that either of them discloses anything to vary the conclusions to be drawn from the testimony of Arlington and Harmanson, as to the probable ability of the testator to see, if he looked, the attestation of the will. Hannon states the height of the trundle bed to be by measurement, eleven inches, but says that he omitted to measure the height of the desk; whilst White states the length of the desk or bureau to be three feet and eleven inches, and its width two feet and three-quarters of an inch. He does not state, however, the height either of the bed or of the desk.
The foregoing constitutes, I believe, all the testimony which throws any light on the act of attestation, and the ability of the testator to see it. It is clear, that the testator might have seen the person of each witness whilst in the act of attestation, with the exception of the writing hand ; but that the will and the writing hand of each witness were out of his view at the several moments of time that the witnesses respectively subscribed their names.. It is also clear, that the question whether the testator could see the will in the intervals of time between the moments when the witnesses were respectively occupied in writing their names, turns on circumstances other than that of the testator and the witnesses being in different rooms ; inasmuch as it is shown by Harmanson that the will was placed on that half of the desk which was within the range of the testator’s vision. In this state of things, whether the testator could see the will or not, in the intervals just mentioned, would depend on the distance of the will from the position he occupied in the bed, and the shape of the top of *132 the bureau or desk, or its height, as compared with the elevation of the testator’s head. The height of the piece of furniture on which the will was attested is estimated by Harmanson, as we have before stated, at four feet; and it is indifferently styled by the witnesses, a writing desk, a secretary or bureau. If it was a bureau with a level horizontal top, it might be doubtful whether the head of the testator was so raised by the pillows and bolster as to enable him to see the will. If, on the other hand, it was a writing desk, made, as they often are, with the top so inclined as to make it lower in front than in the rear, there would be no difficulty in supposing that the testator, at the distance he was from it, and in the position which he occupied, might have been able to see the will upon it: and, in the absence of testimony negativing such a supposition, I do not think that it is unreasonable to infer from the evidence, that the ability of the testator to see the will during the attestation was merely suspended by the witnesses having to turn their backs to the testator as they were subscribing their names, and thus interposing their persons between the testator and the will. Sueh an inference in favor of a will which has been sustained by the learned judge of the Circuit court, and about the formal attestation of which he expresses no doubt in his opinion placed in the record, is by no means so strong as that, which was drawn by the jury in favor of the devise in the case of Tod v. The Earl of Winchelsea, 12 Eng. C. L. R. 227.
In this view of the case, it is manifest that if there was any incapacity in the testator to see anything essential to the validity of the attestation, such incapacity was not due to the fact that he was not in the same room with the witnesses; and the reason of the rule which presumes him unable to see what is done in a different room, and declares the attestation in a *133 different room to be prima facie bad, is of course taken away. The presumption in favor of a will subscribed by the witnesses in the same room with the testator, and against one attested in a different room, like other presumptions, must yield to positive proof. For as was said by Judge Cabell, in the case of Neil v. Neil, 1 Leigh 28, “ Presence is not synonymous with being in the same room with the testator ,* for a man may be so situated as to see what is passing in another room as accurately as if it were in the same room; and he may be so situated as to be as incapable of seeing what is transacting in the same room as if it were in a different room.”—“ An attestation out of the room of the testator, but proved to be within the scope of his vision, becomes good as being in his presence ; and an attestation in the same room, but proved to be out of the scope of his vision, becomes bad as not being in his presence.”
Placing this case, therefore, on the same footing that it would have occupied had the attestation taken place in the same room, can we say that it has not been attested in the testator’s presence ? I think not. I cannot think, when the testator is so situated with respect to the witnesses and the will in the same room with him, as that he may otherwise see all that is passing with respect to the attestation, that the mere interruption of his view of the will caused by the fact that the table or desk on which the will is placed is so situated as to make it convenient or necessary for the witnesses that they should sit or stand with their backs to the testator at the moment of subscribing their names, would justify us in holding, that the will was not attested in the testator’s presence. I could not so decide without being prepared to go still further, and to say, that even when the witnesses were sitting face to face with the testator, with the table and will in full view, the casual interposition of the *134 person of a physician, nurse or other attendant, between the testator and the will at the moment when a witness subscribed his name, would defeat the will.
The counsel for the contestant has argued to show that we cannot sustain the will here without going counter to the course of the majority of the court in the case of Neil v. Neil, to the opinions of the president of the court and of myself expressed in the case of Moore v. Moore, 8 Gratt. 307, and also to the decision of the Supreme court of North Carolina in the case of Graham v. Graham, 10 Ired. R. 219. Each of these cases is very different from the one before us. In Neil v. Neil, the will, though attested in the same room, was subscribed by the witnesses at a time when the testator was lying in his bed with his back turned to them, and so weak that he could not change his situation without aid, which was not furnished; so that in fact he did not see and could not see the witnesses or the table, or the will, or anything that was passing relative to the transaction. And in Moore v. Moore, the attestation was in another room, wholly out of the view of the testator; and though he had strength sufficient to have enabled him to change his situation in bed so as to see the witnesses, it was expressly found by the verdict in the case, that he made no such change. And in the case of Graham v. Graham, which was also a case of attestation in a different room, the statement of the case shows, that though the door in the partition wall was open, and the testator so situated in his bed with respect to the door and the witnesses, that he could, by turning his head and looking around the side of the door, see the backs of the witnesses as they sat at the chest writing, yet he could not see their faces, arms or hands, or the paper on which they wrote; a view of those being obstructed by the partition.
The Circuit court instructed the jury, that though *135 the testator could have seen enough of the persons of the witnesses while they were subscribing the will, to enable him to recognize them, yet if he could not have seen what was going on whilst they were in the act of attestation, the paper was not properly attested; and the jury found against the will: and from a judgment accordingly, an appeal was taken.
I concur in 'the opinion of the chief justice, that the Circuit court had given a rigid construction of the terms of the act; though I also think that it was in strict conformity with the cases hitherto decided, and with the policy and meaning of the act. In that case, one of the great objects of the act in requiring the will to be attested in the presence of the testator, viz: to prevent a false paper from being surreptitiously imposed on the witnesses, might have been as easily defeated as -if no part of the witnesses could have been seen, or the door had in fact been closed. The testator saw nothing and could see nothing that was passing during the transaction. He could at no time of the attestation see either the faces of the witnesses, their arms, the paper to be subscribed, or the subscribing hands; and he was prevented from seeing them by reason of the attestation being had in another room; the obstruction of his view in the particulars mentioned, being caused by the partition wall of the two rooms. Whilst in the case before us, the power of the testator to command, supervise and control the attestation, and to detect and defeat any effort at imposition, was the same as if the attestation had taken place in the same room; and the temporary interruption in the view of what was going on, was caused by the fact that the witnesses in standing or sitting at the desk, had to have their backs to the testator whilst engaged in subscribing their names.
It is true, that Judge Cabell in the case of Neil v. Neil, says, that the object of the law can only be *136 effected by the testator’s being in such a situation in relation to the will and the witnesses, that he may, if he will, see from that situation, both the will and the witnesses in the act of attestation ; and that this capacity in the testator is the true test of presence. I do not think that in saying so he gave any new definition of the term, or declared any new tests of the presence of the testator. He only expressed with more clearness and precision, what had already been decided in the cases of Shires v. Glascock, 2 Salk. R. 688; Davy v. Smith, 3 Salk. R. 395; and Casson v. Dade, 1 Bro. C. C. 99. For I cannot percieve how it can be said, that the “ signing was in view of the testator,” as was said in the first of these cases ; or that “ the testator had the power to see the witnesses and what was done,” as was said in the second; or that the testatrix “ might see what was passing,” as was said in the last, without necessarily implying the ability to see the witnesses and the will. The different expressions used in all these cases mean, I think, the same thing. The rule to be deduced from them must, however, have a fair and reasonable construction. The term “ presence” is vague ; and it is difficult to define it with precision. Define it as we may, or adopt what rules we may for testing it, a literal adherence, in all cases, to the language employed may sometimes lead to the ruling out of wills the attestations of which conform with the true intent and meaning of the statute. And where the testimony establishes such a relation between the testator and the witnesses and the will, whilst the act of subscribing by the witnesses is going on, as that there may be inferred therefrom a power on the part of the testator to see the witnesses and the space immediately around and about them, whilst they are engaged in subscribing their names, and a consequent consciousness on the part of the testator of a present *137 and abiding capacity to control the whole transaction, and a like consciousness on the part of the witnesses that they and what they are doing are thus under the immediate supervising attention and command of the testator, it would, I think, be going too far to say, that the mere interruption of the testator’s view of the will, by the interposition of the persons of the witnesses between it and the testator, as they severally stand or sit at a desk in the moment of subscribing the will, should characterize the attestation as one not made in the presence of the testator.
Giving to the provisions of the act a fair interpretation, I think we may, without any departure from precedents and the reasons on which they are founded, say that the act of subscribing their names by the witnesses in this case, was done, virtually and substantially, in the presence of the testator.
The sentence of the Circuit court must be affirmed.
Allen, J. concurred in the- opinion of Daniel, J.
Lee and Samuels, Js. concurred in the opinion of ■ Moncure, J.
Judgment affirmed.