SAMUEyUS, J.
In the argument here it was insisted that the motion to instruct the jury was properly overruled, for reasons apart from .the proposition of law submitted for the judgment of the court; that the instruction, if given, would have been an invasion of the province belonging to the jury. If the record showed this to be true, then the motion was properly overruled, without regard to any other reason. This court, in Kincheloe v. Tracewells, 11 Graft. 587, and in Harvey v. Epes, supra 153, decided that the courts might decide upon such motions by parties just as they were made, and were under no legal necessity of sifting or modifying such motions, so as to separate and withhold the erroneous portions from the jury. I am of opinion, however, there is no foundation for the objection. It appears that after all the evidence had been heard by the jury, the contestants submitted to the court the motion for an instruction to the jury. This motion did not ask of the court an expression of opinion in regard to facts proved, or the weight of *evidence.
The contestants admitting the absolute verity of every thing which fhe evidence tended to prove, yet insisted that the proof was insufficient to prove the will; that conceding all the witnesses had said to be true, yet as it was not proved that any two of the witnesses had subscribed the will in the presence of each other, the proof of execution was not sufficient in law. There was no proof tending to show such subscription by the witnesses (in fact it was disproved), and upon this absence of proof the contestants predicated their motion to instruct. It would have been idle to submit it to the jury in the usual form to pass on the sufficiency of evidence to prove a subscription by two witnesses in the presence of each other, when there was no proof whatever having a tendency to that end.
A court is not bound to decide questions of law, on a trial by jury, unless they be relevant to the case before it; such questions are relevant only when they arise upon the evidence. A bill of exceptions is intended for the sole purpose of putting upon the record the facts upon -which a party rests his proposition of law, the proposition itself, and the decision of the court thereupon. It has been frequently decided by this court that the facts upon which a legal proposition is predicated must be shown by the record; if it were otherwise, cases might be decided upon abstract questions having no existence in such cases. A bill of exceptions to a ruling by the court in the progress of the trial is well taken, if it show that there was something in the evidence to serve as a basis for the proposition of law, the proposition itself, and the decision of the court. It is usual to state the tendency of the evidence, leaving its sufficiency to be passed on by the jury. If however the exceptor admits in advance the existence of every fact which the proof tends to show, and puts his admission in the bill of exceptions which *he tenders, it is difficult to perceive why he may not do so. On facts thus stated the appellate court can determine whether the question of law did arise with as much certainty as if they had been stated in any other mode. In the case before us, it appears from the facts stated, that no two of the witnesses subscribed the will in the presence of each other. On this the contestants below, the appellants here, moved for an instruction to the jury to the effect that the will was not well executed. This instruction the court refused to give; and this decision is brought here for revision.
The facts in the record, so far as the witness Walton is concerned, are of no weight on the question whether the will was executed in the form prescribed by law: he was not in the presence of the testator at any time when any other witness was present. The case must therefore rest upon the facts with which the witnesses Hutch-ings and Wright are connected. The witness Hutchings, on or about the 8th day of May 1852, heard the testator acknowledge the will, and thereupon, in the presence of the testator, subscribed his name as a witness. The requisitions of the law up to this point had not been complied with. About four days afterwards, on or about the 12th of May 1852, the testator again acknowledged the will in the presence of the witnesses Hutchings and Wright, and Wright subscribed his name as a witness in the presence of the testator and of the witness Hutchings: the witness last named did not again subscribe the will. Thus the precise question passed on by the Circuit court was presented, and is, whether it was necessary that the subscription by each witness should be made in the presence of the other. The Circuit court held it was not necessary; and in this I think the court decided correctly. I am led to this conclusion as well by looking to the terms of the statute as to its obvious purpose and intention. It requires of the testator *himself, that “the signature shall be made, or the will acknowledged by him, in the presence of at least two competent witnesses present at the same time.” This requisition, construed as it should be, with reference to former laws of which our statute is a revision, means that the relation of “presence” shall exist between the testator and the witnesses, and does not require that the relation of “presence” should exist between the witnesses them *572 selves. It is easy to conceive how witnesses might both be in the “presence” of the testator, and yet not in the presence of each other, if we give the word “presence” the meaning heretofore affixed to it by judicial decisions. Shires v. Glasscock, 2 Salk. R. 688; S. C. Carthew 81; Davy v. Smith, 3 Salk. R. 395; Casson v. Dade, 1 Bro. C.. C. 99; Neil v. Neil, 1 Leigh 6.
The English courts, in passing on the statute 1 Victoria, ch. 26, § 9, from which our statute is taken, have decided that the witnesses must not only be in presence of the testator at the time he makes his signature or acknowledgment, but in the presence of each other. This is not the necessary meaning of the terms used; for as already said, the witnesses might both be in the presence of the testator, yet not in the presence of each other. To hold that the witnesses must not only be in the presence of the testator, but also in the presence of each other, will impose upon the courts of probat the double duty of deciding on these double relations; thus complicating the proofs, and thereby increasing the danger of defeating the testator’s intention; and this because, as is said, it should be inferred that the witnesses must be in the presence of each other from the fact that they are required to be in the presence of the testator.
If we look to the obvious purposes of the statute, there is little room for doubt. The will must be in writing; the law makers having deemed it unwise to *rely on parol testimony touching the disposition of property by will. After the will is written, it is required that the testator shall manifest his approval of its provisions by signing his name, or causing it to be done. The signature by the testator performs a double function; first to show his approbation of what is written, and next to identify the paper. The office of the witnesses is to identify the paper, to prove the signature or acknowledgment thereof when it shall thereafter be offered for probat. The law prescribes as the only mode of identification, that the witnesses subscribe their names in the presence of the {estator, so that he may know the witnesses aré subscribing the paper which he intends to be his will. All these purposes of the statute are secured by the construction of the Circuit court: It neither sacrifices the end to the means, nor the means to the end. That the testator in this case intended the paper propounded to be his will; that he acknowledged it as such in presence of Hutchings and Wright; that Hutchings in testator’s presence subscribed the paper; that Wright in presence of fiutchings and of testator subscribed his name, are all facts beyond question: yet it is said that the will is defectively executed because Hutchings did not subscribe in presence of Wright as well as of testator. This, as I have already said, is not required by the letter of the statute. It is argued, however, that each witness should observe the act of subscription by the other as a security against fraud and forgery. Before yielding to this argument, it is well to consider whether the same security is not afforded by the construction put on the statute by the Circuit court. Under either construction, fraud or forgery could be made effective only by the perjury of two subscribing witnesses. They must prove, either truly or falsely, that testator put his signature to or acknowledged the paper as his will; if truly so proved, no injury *is done to any one; if falsely proved, it can only be deplored as one of the many abuses which may be practiced in giving testimony. It will do no good to place the honest execution of wills under arbitrary and capricious restriction for the purpose of preventing the perpetration of fraud and forgery by means of perjury, seeing that fraud, forgery and perjury may attain their ends just as readily as if the restrictions had never been imposed. At last, it will be found that the only security against evil practices exists in the vigilance of the testator and the integrity of witnesses. If knaves shall combine to establish a spurious will, their work will be just as easy under one construction as under the other.
The general principles involved in this case were considered in the case of Parramore v. Taylor, 11 Gratt. 220; and Beane v. Yerby, supra 239, recently decided by this court; and it is unnecessary to go over the same ground. I- therefore only refer to those decisions and the cases cited by Judge Moncure in Parramore v. Taylor, especially to Pollock v. Glassell, 2 Gratt. 439; Rosser v. Franklin, 6 Gratt. 1; Moore v. Moore’s ex’or, 8 Gratt. 307; Sturdivant v. Burchett, 10 Gratt. 67; as giving the rule by which this case must be decided.
I am of opinion to affirm the decree.
MONCURE and EEE, Js., concurred in the opinion of Samuels, J.
AUBEN, P., andDANIEU, J., dissented.
Decree affirmed.