Daniel, J.
The writing, the probat of which is con-
tested, is dated the 23d of July 1834, and was ordered to be recorded by the County court of King and Queen, at the October term in the same year. A bill being filed in the Superior court, contesting the probat, an issue was directed, on the trial of which the jury found a special verdict, to the effect, that the said paper writing was written on the day on which it bears date, at the request and dictation of the deceased, and after it was written was read to him, and then read by him carefully; and was then signed by him in the presence of the three subscribing witnesses, who were by him requested to sign it as witnesses; that the will was then taken by the witnesses into the passage and there signed by them in the presence of each other; after which they carried it back and handed it open, with their names subscribed to it, to the testator, who held it a minute or more and looked at it, and then gave it to one of them to be folded up for preservation. That the testator lying in his ordinary position in his bed, could not have seen the attesting witnesses sign their names, but he might have seen them if he had gotten out of bed, or by changing his position in the bed so as to lean out over the foot of the bed, and that his state of health and strength was such at the time that he might have gotten out of bed or have so changed his position in it, if he had desired to do so ; but that the testator did not get out of bed nor change his position in the bed so as to lean out at the foot of it, and that the testator at the time was of sound and disposing mind and memory and of lawful age to make a will.
It is conceded that the paper in question is a good will of personal property, as prior to the passage of the act of the 4th March 1835, entitled “ An act prescribing *314 the manner of making wills and testaments of personalty,” the attestation by the witnesses was not one of the requisites of the due execution of wills of personais. The only question here is whether it was duly executed as a will of realty; and turns upon the construction of the words of the last clause of the second section of the act of the 17th February 1823, entitled “An act concerning the probat of wills in certain cases.” The second section of the act is in these words, “ That no last will and testament shall be good and valid to pass any estate, right, title or interest in possession, reversion or remainder, in lands, tenements or hereditaments, or annuities or rents charged upon or issuing out of them, unless such last will and testament be signed by the testator, or testatrix, or by some other person in his or her presence, and by his or her direction, and moreover if not wholly written by himself or herself be attested by two or more credible witnesses subscribing their names in his or her presence.”
The only difference between the language of this section and that of the first section of the act of the 3d March 1819, entitled “ An act reducing into one the several acts concerning wills” &c. in regard to the attestation is, that the act of 1823 requires the will to “be attested by two or more credible witnesses subscribing their names in the presence” of the testator, whilst that of 1819 simply requires that it “ be attested by two or more credible witnesses in the presence” &c.
The only reported case, in which the meaning to be given to the words “ attested in the presence of the testator” has been heretofore directly before this Court for adjudication, is that of Neal v. Neal, 1 Leigh 6.
In that case it was proved that the testator who was very weak and not able to rise from his bed or turn himself without assistance, was raised up and placed on the side of his bed, and a small table set by, and the will placed on it; and that the testator supported there, *315 signed it; after which the table was removed and he placed in his bed ; that he was laid with his back to the table on which the will was laid, when two of the attesting witnesses subscribed their names; and that the testator could not see the witnesses attest the will, or the will itself, being unable to turn his face towards them. That the third witness came into the room sometime after this and put his signature, as he said, in a situation where the testator could have seen him; though other witnesses said they thought differently. It was also proved, that before any of the witnesses subscribed, the testator was asked if he acknowledged the paper to be his last will and testament, and if he desired that the witnesses should respectively attest it; to which questions he answered in the affirmative.
On an appeal from a decision sustaining the will, all the English cases bearing upon the construction of the clause of the statute of 29 Charles 2, (from which our statute of 1819 is taken,) requiring the attestation of the witnesses in the presence of the testator, were cited and reviewed by the Judges of this Court in their opinions. The case it is true was one of a will attested in the same room with the testator, yet the circumstances of the case and the nature of the question not only justified but necessarily called for the declaration of certain rules and definitions equally as controlling in questions arising on attestations out of the room. The construction therefore of the words “in the presence of the testator,” drawn by the Court as well from the cases where the attestation was out of the room, as from those in which the attesting witnesses and the testator were, at the time of the attestation, in the same room, carries with it the same weight as a decision when sought to be applied to a case like the one before us, as if it had been pronounced in one of the same class. The true meaning and objects of the requirement of the statute are, I think, more fully developed in the case just cited *316 than in any of the English cases on the same subject; and in a recent work, Modern Probate of Wills, the opinion of Judge Cabell is referred to as containing one of the best commentaries on the construction of the word “ presence ” in the statute, to be found. With such views of the character of that case, I do not deem it necessary to repeat here an extended notice of the English decisions preceding it, and shall content myself with citing such portions of the opinions of the Judges as I think particularly applicable to this case, and with endeavouring to shew that the authority of Neal v. Neal is not only not impaired, but is fully sustained by decisions of a more recent date.
“The object of this requisition (says Judge Cabell in his opinion,) is “to enable the testator to see that those who attest the will are the persons in whom he confides, and to prevent a false paper from being surreptitiously imposed on the witnesses.” “ The object of the law will be completely effected, and can only be effected by the testator’s being in such a situation in relation to the will and the witnesses that he may, if he will, see from that situation, both the will and the witnesses in the act of attestation. This capacity in the testator is unquestionably the test of presence, in all cases of attestation out of the room in which the testator may be, for all the cases shew, that an attestation out of the room of the testator, is held to be in his presence, if he might see it, and not in his presence if he could not see it. Now, as the reason of the law in requiring an attestation to be in the presence of the testator is precisely the same, whether that attestation be in the same room, or in a different room, the law will apply the same test of presence to both cases. An attestation, therefore, in the same room with the testator, will as in the case of an attestation in a different room, be held to be in his presence or not in his presence, according to the capacity or want of capacity in the testator to supervise the transaction. *317 There is however one important difference between an . . , , . .. attestation m the same room and one not in the same room with the testator: in the absence of all proof a man is presumed to be able to see what is done in the same room with him, and to be unable to see what is done in a different room. Au attestation, therefore, in the same room is prima facie good, an attestation in a different room is prima fade bad. But this presumption must yield to positive proof. An attestation therefore, .out of the room of the testator, but proved to be within the scope of his vision, becomes good as being in his presence: and an attestation in the same room, but proved to be out of the scope of his vision, becomes bad as not being in his presence.”
Judge Coalter says that the words and intention of the statute are satisfied only when it is proved “ that the testator was so present to the witnesses and they to him as that he might and therefore probably did see the ■ attestation.”
Judges Carr and Brooke, who thought that the will had been duly attested, endeavoured to maintain that though the testator was not able to change his position without the aid of others, yet as the attestation was in the same room, and the testator could by his attendants have caused himself at any moment to be turned so as to bring the will and witnesses in full view, and so near to him as to afford him an opportunity to distinguish a false will if such had been substituted, the attestation ought to be held to be virtually in the presence of the testator; that a knowledge on the part of all present that the testator could in an instant cause the transaction to be subjected to the test of his senses, united with the fear which guilt always feels, would give to any party meditating such a fraud, a consciousness so strong of the presence and power of detection of the testator as to furnish substantially those guards intended by the statute.
*318 But a majority of the Court held that this capacity of the testator to cause the relative position of himself and the witnesses to be changed, was of no avail. “A power of that sort (said Judge Cabell) exists in every case: in every case the testator may cause his own situation, or that of the witnesses, to be so changed as that he may see the attestation. Such a power was expressly held to be insufficient in the cases of Doe v. Manifold, and Tod v. The Earl of Winchilsea.
Judge Coalter in reply to the same view, said, “If the doctrine contended for be tenable, why shall not a will executed in an adjoining room be good, when the testator could direct the table to be set out within his view whereat to attest it ? Why not if attested in an obscure corner in the same room, because he might have ordered it to be done in a part of the room where he could see what was doing. The law is not that it shall be attested in his presence if he thinks it proper to superintend the act himself, otherwise he may trust to the honesty of his friends and the witnesses to see for him that no fraud is done: no; the law requires him to be present himself, body and mind. If he can by turning his eye see what is doing, he will be presumed to have seen it, and no further proof that he did see is necessary; but if interposing walls or other obstructions render it doubtful whether he could see or not, the power to see must be made apparent; as that a door or window was open, (not that it might have been opened if requested,) and that his position in bed was such (not might have been such had he desired to be raised or turned) as that he had it in his power by simply looking on to see.”
The reasoning of Judge Green, the other member of the majority of the Court, was to the like effect, and need not be repeated.
In the three cases of Shires v. Glasscock, 2 Salk. 688; Davy v. Smith, 3 Salk. 395, and Casson v. *319 Dade, 1 Bro. Ch. R. 99, (cited in Neal v. Neal,) in which attestations out of the room were sustained, it was shewn that the witnesses and the testator were so situated in proximity and relation of situations that the testator might have seen the act of attestation. And Judge Carr admitted that all the attempts made to support wills out of the room of the testator, and also out of his sight, had failed ; and that in many cases it had been decided that though the signing was in a room contiguous, yet the devise would be void unless the testator was in a position, from which he might if he chose, see the witnesses subscribe without changing his position. The cases of Eccleston v. Speke, Carth. 79; Broderick v. Broderick, 1 P. Wms. 239; Machell v. Temple, 2 Show. 288, and Doe v. Manifold, 1 Mau. & Selw. 294, referred to by him and cited by the bar here, are all of that class.
In looking to more recent cases it will be found that the rule has been in no degree relaxed. In the case of Reynolds v. Reynolds, 1 Spears’ R. 253, decided by the Supreme court of South Carolina in 1843, the witnesses after seeing the testator sign, being ignorant that it was necessary that the testator should see them subscribe, withdrew for convenience to a table in the hall and subscribed their names. It was proved that the testator could not as he lay in his bed have seen them so subscribe. But it was also proved that if he had risen from his posture, and sat on the side anywhere from the centre to the foot of the bed, he might have seen them; and it appeared that he had strength enough to have done so ,• but it was also proved that he did not alter his recumbent posture at all. It was held that the attestation was not good ; that although the testator need not actually see the witnesses sign the will, yet they must have stood in a position to let him see their subscribing ; which means that they must not withdraw themselves from the continued observance of his senses, although *320 the testator may himself refrain from using such senses ; that such discretion is with him, but not for the witnesses to avoid the opportunity of his doing so.
In the case of Edward Colman, 7 Eng. Eccl. R. 392, the will was signed by the deceased in the presence of two witnesses; but subscribed by them in an adjoining room communicating with it by foldiug doors, ivhich were open, the witnesses being in such a situation, that the testator could not, without a change of position, see them. The motion for probat was rejected.
So in the case of Alexander Ellis, 7 Eng. Eccl. R. 150, it was proved that the will was signed by the testator in the presence of the witnesses, who took the paper into another room which communicated with the testator’s by two separate doors, both of which were open, and there subscribed it in a situation where the testator could not see the witnesses, nor they him, yet so near to the testator that they could hear him breathe. The Court held that the will was not attested in the presence of the testator, actual or constructive. They said that the case ivas a hard one, but the law was imperative ; and the probat was refused. No case has been cited at the bar, and I have not been able to find one, in which a will attested out of the testator’s room and in a situation where the testator could not see the act of attestation, has been sustained. In the case before us it is not only found that the testator could not see the witnesses attest without a change of position, but all inference of such a change of position deducible from the fact that the state of the testator’s health and strength admitted of his altering his situation, is cut off by the express finding of the jury that he did pot get out of bed nor change his position in it. I cannot therefore perceive on what ground the due attestation of the paper is to be maintained.
*321 It is suggested that such a ground may be discovered in the circumstances which transpired after the witnesses had subscribed. It is difficult to conceive what further validity can be imparted to the paper by those circumstances ; which are, as already set forth in the statement of the facts, that after the witnesses signed their names, they carried back the will and handed it open with their names subscribed to it to the testator, who held it a minute or more and looked at it, and then gave it to one of them to be folded up for preservation. It is to be borne in mind that the verdict of the jury is a special one. and therefore there is no room for presumption ; and as the circumstances just detailed do not of themselves import a second attestation by the witnesses after their return into the presence of the testator, I cannot perceive that they are of any value in the controversy.
If however it is to be inferred that the testator intended by what he did to approve of the manner in which the witnesses had discharged the office they had been requested to perform, such inference would, I think, be of no legal weight. In the most of such controversies it might be doubtless shewn that the testator was satisfied with the attestation, as otherwise, he would cause it to be so made as to conform to his views. The mode of attestation is one of the safeguards which the law has enacted for the protection of the testator, and it does not permit him to dispense with it by substituting it by another, however well he may approve of the latter, or however fair and free from all suspicion it may in fact be shewn to be.
All implications and inferences favourable to the will, which could in any way be deduced from the conduct of the witnesses and the testator, after the subscribing by the former (supposing that it were allowable to imply facts not found in the verdict) are, I think, fully met by adjudicated cases.
*322 In the case of Edelen v. Hardey’s lessee, 7 Har. & John. 63, which was an action of ejectment, the case turned upon the due execution of a will which was offered as evidence on the trial It appeared that after the testator had signed the will, the witnesses by his request went out of the room into an adjoining room and there signed. After it was so signed by the witnesses, a friend of the testator who had written it, carried it back to the testator and read it to him; informed him that the witnesses had attested it, shewing him at the same time their hand writing, at which the testator nodded his head by way of assent, appeared quite satisfied, and added as witness thought, “ well” or “ very well.” The Court was asked to instruct the jury that this evidence, if believed by them, furnished presumptive proof of a compliance with the requisites of the statute. This instruction the Court refused to give ; and on an appeal its refusal was sustained. The case was, I think, a stronger one for the will than the one under consideration.
Even were it considered that the conduct of the witnesses after their return into the room of the testator, implied a reacknowledgment by them of their signatures to the will as witnesses, such reacknowledgment would not, I think, according to the decisions on the subject, cure the defective attestation. In the case of Ragland v. Huntingdon, 1 Iredell R. 561, it was proved by one of the subscribing witnesses that he was requested by the testator to prepare his will according to his instructions, and he did so, and signed his name as a witness before the testator signed, but not in his presence, and then read the will to the testator and told him he had signed as a witness; and the testator approved and executed it; and the other witness then signed in the presence of the testator. It was held not a valid execution of the will — the statute requiring both witnesses to sign in the presence of the testator.
*323 The ninth section of ch. 26, Victoria 1, declares that no will shall be valid unless signed at the end or foot thereof by the testator or by some other person in his presence and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator &c.
In a case arising under this law, Moore v. King, 7 Eng. Eccl. R. 429, the Ecclesiastical court held, that though both the witnesses attested and subscribed in the presence of the testator, yet as the law required the witnesses to be present at the same time, that the attesting and subscribing by one of the witnesses on one day and the attesting and subscribing by the other on another day, though the first witness on the latter occasion acknowledged his signature in the presence of the testator and of the other witness, did not fulfil the requirements of the law. The facts as stated were, that the testator signed a codicil in the presence of a witness (his sister). On a subsequent day when his sister and another person were present, he desired her to bring him the codicil, and requested the other person present to attest and subscribe it, saying in the presence of both parties and pointing to his signature, “ This is a codicil signed by myself and by my sister as you see; you will oblige me if you will add your signature, two witnesses being necessary.” The second witness then subscribed in the presence of the testator and of his sister, the latter who was standing by him pointing to her signature and saying, “ there is my signature, you had better place yours underneath ;” she however did not resubscribe.
If this case is entitled to respect as authority, it seems to me decisive of the question under discussion, as it is manifest that the only thing causing it to fall short of a literal compliance with the requisitions of *324 the statute, was the substituting the acknowledgment by the first witness of her signature in the place of a resubscribing.
As before intimated however, I do not deem it necessary to the decision of this case to rely on such decisions, the character of the verdict forbidding, in my opinion, any inferences or implications that make it necessary for those denying the validity of the will to invoke the aid of such authority.
Nor do I think that the decisions in relation to the proof by the witnesses of the signing by the testator, tend in any measure to impair the force of the authorities I have cited. There is no question here as to the execution of the will on the part of the testator, but the case turns on the manner in which the act of attestation has been performed by the witnesses; and the requirements of the law in relation to the two things are of a wholly different character, for whilst it is positive in requiring that the will shall be attested by the witnesses subscribing their names in the presence of the testator, it does not require that the testator shall sign the will or cause it to be signed for him in the presence of the witnesses. The kind or degree of proof by which the fact of signing by the testator or some one for him, is to be established, is not prescribed. No doubt therefore is thrown on the proposition which I have endeavoured to maintain, nor any inconsistency in the opinions of Judges exhibited, by shewing that a long series of decisions commencing at an early period, declare that it is not necessary for the witnesses to see the testator sign, and that the fact of signing may be inferred from his acknowledgment of the instrument to be proved as his will, whilst it is at the same time shewn that a uniform current of decisions emanating from the same tribunals, announce in effect that the witnesses must attest under the immediate supervision of the testator. For these reasons I am of opinion that the will was *325 not duly attested, and that the sentence of the Court below should be reversed, and that the instrument should be admitted to record as a will of personals and rejected as , a will oí real estate.
Baldwin, J.
The point of the objection taken to the probat of this will is, not that the attestation of the subscrbing witnesses was made out of the room where the testator was at the time, nor that the testator did not see the witnesses in the act of signing their names to the instrument, nor that he was incapable, either mentally or physically, of observing, understanding and controlling the act which they thus performed: but it is that the position of the testator’s body was such at the time that the attestation did not fall within the scope of his vision, and could not without a change of that position, which although he was fully capable of making, he did not in point of fact make. If therefore the objection prevails in this case, it must be fatal to every will in regard to which it occurs, under all conceivable circumstances. We are at liberty therefore to make the case, strong as it is, if possible still stronger. We may suppose that a testator in a perfect state of health both of body and mind, and actively engaged in the pursuits of life, sends for his most confidential friends to attend and witness his will, that he dictates it to one of them who writes it at his side ; that he forthwith reads it over, signs and acknowledges it to the witnesses, they sitting or standing around him; that it being more convenient from the condition of the room, or the furniture, or any other cause, they then at his request or by his permission, pass into an adjoining room, through a door between the two rooms, kept wide open during the entire transaction, immediately subscribe their names to the instrument, and instantly return with it to the testator, presenting it to him open and pointing to their signatures with the ink thereof still wet; that he there *326 upon receives it, carefully inspects it, expresses his approbation, folds it up and puts it away amongst his papers, or deposits it with one of the witnesses for safe keeping; that while the witnesses are signing their names, the testator remains in the room from which they passed, without the slightest impediment to his seeing through the open door every stroke of the pen with which they wrote, except only that he happens at. the moment to stand or sit or lie with his back towards the witnesses, instead of his face. Is such a will so made and attested null and void under the provisions of our statute, 1 Rev. Code, p. 365, because the witnesses when in the act of subscribing did not fall within the range of the testator’s vision ?
The terms of the statute require that if the will be not wholly written by the testator, it shall “ be attested by two or more credible witnesses in'his presence.” It is not prescribed that the testator shall see the witnesses sign, nor is the character of the place of attestation designated: it may be done in a small chamber or a spacious hall, a public street or an open field. The word “ presence” is rather indefinite in its signification, but may be somewhat explained by contrasting it with its opposite, “absence.” The attestation must not be in the absence of the testator. It is adequate to preventing the mischief of a will being brought already drawn and subscribed with the names of witnesses, and obtaining the testator’s signature or acknowledgment in a brief space of time, or of procuring such signature or acknowledgment, and taking it away to be thereafter subscribed by witnesses according to their own convenience or purposes. It may also present some slight impediment to the foisting of a false paper upon the testator or the witnesses about the time of attestation ; but it is obvious that there can be no absolute security against such a fraud, which can be best detected by looking to all the circumstances of the transaction ; and *327 it is clear that the legislature did not intend by a rigid formality to impair seriously the testamentary power. And it surely is not competent for the Courts to interpolate words not found in the statute, and by an inexorable adherence to them, defeat fair wills, liable to no suspicion of fraud or malpractice, and so sacrifice the object to be attained, the safe exercise of the testamentary power, to mere slips in matters of form.
It is conceded by every one that it is unnecessary the testator should actually see the witnesses sign, if he could do so from the situation in which he was, by the mere exercise of his volition, and the question is placed upon the narrow ground whether that volition is to be accomplished without a change of place, or position, or posture, in the room where he sits or stands or lies. There is no warrant I think, either in reason or authority for the proposition that subscribing witnesses must be within the range of the testator’s vision from the spot of the room where he is at the time, as he happens to sit or lie or stand, if he is mentally and physically capable of changing his position in his bed or chair or room so as to enable him to see the subscribing witnesses in the adjoining room.
In the present case there is a strong and controlling feature not to be found in any other that I have seen. The will after being signed by the witnesses, was brought by them to the testator, and inspected and identified by him, and their attestation fully approved. This in connection with the other circumstances of the transaction, for which I refer to the special verdict, made the attestation one entire, continuous act, substantially in the testator’s presence, and in conformity with the fair interpretation and true spirit of the statute. And the establishment of this will cannot introduce any injurious principle or precedent: whereas its rejection would, as I conceive, tend to such a result.
*328 Allen, J.
The facts found by the special verdict raise the question whether the will was so subscribed by the attesting witnesses in the presence of the testator as to constitute a valid will of realty under the statute. . The cases in the English courts in reference to the subject are fully examined and commented on by Judge Carr in the case of Neal v. Neal, 1 Leigh 6, and the result to be deduced from them is that an attestation in the same room is prima fade good, and that an attestation out of the room is prima fade bad ; but that in the latter case such attestation becomes good if shewn to be within the scope of the testators vision. In the latter proposition all the Judges of this Court concurred. The statute intended to protect the testator from witnesses in whom he did not confide, and to prevent a false paper from being fraudulently imposed upon him and the witnesses: And hence the necessity of such a presence as will give him a control over the attestation during the whole progress of the transaction. Where they are in the same room they are mutually present, and if the testator has the capacity by his own unaided power to see what is transpiring, he has the control over the attestation which the statute designed to give him. He may not choose to overlook the transaction, but the power to do so at any instant is a sufficient security against fraud, and constitutes such a presence as conforms to the requisitions of the statute as construed by the Courts.-
But where the attestation is not in the same room, sight comes in place of the mutual presence in the same room. If without a material change of position the attestation comes within the scope of his vision, if by the exercise of his own volition he may in his then position see what is passing at any instant of time the act is in progress, the attestation is in his presence though he may not in fact see it. The knowledge of the fact that he has the capacity to overlook the trans *329 action, gives him the same control over the attestation which is afforded by mutual presence in the same room. It is found in this case by the jury that the testator lying in his ordinary position in his bed could not have seen the attesting witnesses sign their names, the witnesses having carried the will out of the room into a passage and there subscribed it; but that he might have seen them if he had got out of his bed, or by changing his position so as to lean out over the foot of the bed, and that he had the physical capacity to have done either if he had so desired; but that he did neither.
I have found no case, and we have been referred to none, in which the question turned upon the physical capacity of the testator to have followed the witnesses, where the attestation was out of the room, or to have materially changed his position in his room so as to bring the subscribing witnesses within the scope of his vision during the attestation. If such enquiry were proper, then it would follow that an attestation, no matter where made, would have been sufficient, provided the testator had the capacity to supervise it if he desired to do so. This would be to substitute the confidence of the testator in the witnesses and friends about him for the actual presence and control provided by the statute.
If the will in this case had been attested in the same room in the presence of the testator, it would have been a valid instrument, for it had been signed and published as his last will, and nothing was wanting to its completion but a legal attestation. No subsequent inspection or recognition was required to add to its legal effect. But how would it have been if the attestation having been made in the manner disclosed by this record, one of the witnesses by the previous request of the testator, or of his own accord, had folded it up and placed it away in the testator’s desk or taken charge of it himself? Would it be maintained that a paper so *330 attested out of the room and out of his sight could be sustained as conforming to the law ? If not, then it must be conceded that the attestation here alone would not have sufficed to give validity to the instrument; something must be superadded, or substituted rather, in the place of a regular attestation. This would be adding a new term to the statute, and declaring in effect that the will should either be attested in his presence, or if not, that the witnesses after subscribing their names should exhibit the will so subscribed to the testator and acknowledge their signatures. It is unnecessary to enquire whether such a provision would have furnished as great a security against the imposition of a surreptitious paper on a man in extremis, as the actual safeguards thrown around him by the statute. It is sufficient to say that the law contains no such provision, and it is the province of this Court to declare what the law is, and not to enact new laws.
Our statute of wills, so far as respects attestation, was copied from the statute of 29 Charles 2, and it is a well established principle, that where an English statute is copied the decisions of the Courts at Westminster may be considered as having been adopted with the text they expounded.
The case of Eccleston v. Speke or Petty, Carthew 79, occurred in 1st William and Mary, not very long after the passage of the English statute. In that case the testatrix signed the will in the presence of the subscribing witnesses in her bed chamber, the witnesses subscribed it in a hall, and it appeared that it was not possible to see from her chamber what the witnesses did at the table in the hall. .The testatrix continued in her chamber all the time they were subscribing. And it was held that the attestation did not conform to the statute. Nothing was said as to the physical power of the testatrix to have left her chamber. The case established that not being in her chamber where she could *331 have seen if she had chosen, and being out of her chamber and without the scope of her vision, the attestation was invalid. This has been recognized as the leading case on this point, giving a construction to the statute soon after its enactment, and so far as I have seen, has never been controverted by any subsequent case in the English courts or the courts of the different states. The principle of the c ise was distinctly recognized by all the Judges of this Court in Neal v. Neal, and it seems to me is conclusive against the attestation in this case, if the case is to be decided upon the regularity of the attestation alone, as I think it must be. The facts found that the witnesses after subscribing their names in the passage, carried it back and handed it open with their names subscribed to it to the testator, who held it a minute or more and looked at it, and then gave it to one of the witnesses to be folded up for preservation, whilst they furnish a moral certainty that no fraud or imposition was practised on the testator, do not amount to an attestation in his presence, the only security against fraud which will satisfy the requisitions of the law. A will not wholly in the hand writing of the testator may be acknowledged in the most solemn form before any number of witnesses, and under circumstances excluding the possibility of fraud, yet the law presumes it fraudulent, and in the language of one of the Judges in Neal v. Neal, no proof of actual fairness can avail to supply the requisites of the statute.
The will being dated, and the testator having died before the passage of the act of March 4, 1835, Sess. Acts 43, requiring the same kind of proof as to wills of personalty that was requisite to the validity of a devise of realty, I think the facts found are sufficient to authorize its admission to probat as a will of personalty, Redford v. Peggy, 6 Rand. 316, and am therefore of opinion that the sentence so far as it admits it to probat *332 as a will of personalty should be affirmed, and reversed so tar as it was admitted to probat as a devise of realty.
Moncure, J.
thought the will attested in the presence of the testator within the meaning of the statute; and concurred fully with Judge Baldwin.