Staples, J.,
delivered the opinion of the court.
This is a controversy as to the probate of a will. It involves two questions, one of testamentary capacity,, and the other relating to the formal execution of the instrument. A jury was empannelled in the County court, and a verdict rendered in favor of the will; which was approved by the presiding judge. An appeal was taken to the Circuit court. The judge of that court,, after hearing the evidence, was inclined to think that the testatrix was possessed of sufficient testamentary capacity: he however held that the writing was not executed in accordance with the requirements of the-statute; and for that reason refused to admit the will to probate. From that decision an appeal was taken to this court. The case has been argued here, both- *103 upon the question of testamentary capacity, and that of the formal execution of the instrument. It must therefore be considered by us in, both aspects.
In controversies touching testamentary capacity, the evidence being a mere matter of opinion, is generally of a conflicting cbaracter.
As a general rule such evidence unless founded on facts, except in the case of experts, has but little weight with the courts and juries. An exception to this rule is allowed as to the subscribing witnesses, who are regarded in the law as placed around the testator to guard against fraud, and to ascertain and to judge of his capacity.
But it is also held upon good authority, that a person who signs his name as a witness to a will, by his act of attestation solemnly testifies to the sanity of the testator. If he afterwards attempts to impeach the validity of the will his evidence is not to be positively rejected; but it is to be received with the most scrupulous jealousy. 1 Jarmin on "Wills 77, and cases cited in note 1.
In all questions of testamentary capacity, particularly where the evidence is conflicting, the courts are inclined much to consider the dispositions contained in the will. If such dispositions be in themselves consistent with the situation of the testator, in conformity with his affections and previous declarations— if they be such as might justly have been expected— this is itself said to be persuasive evidence of testamentary capacity. The rationality of the act goes to shew the reason of the person. This rule has been repeatedly applied in the English courts in cases of doubtful capacity from age or sickness. 1 Jarmin, page 82, note.
In the case before us, the testatrix had no children *104 of her own, but she had an adopted son, a nephew, to whom she was greatly attached. To him she gave her real estate for life, and at his death it was to pass in fee to her brothers. The residue of her property she gave to her mother for life, and then in fee to the sisters of the testati’ix. One of the witnesses states that these provisions are different from what he heard the testatrix say in health she intended to make. What that disposition was we are not told. But to whom could she have given her estate more deseiwing her just regard and bounty than these devisees, her adopted son, mothei’, brothers and sisters. It is true her father was also living at the time, but he, of course, receives the benefit of the bequest made to the mother. A will containing provisions so just in themselves, so thoughtful, is very persuasive evidence of a disposing mind and memory. It is very true, as counsel have insisted, that suggestions were made at the time b.y persons in the room to the testati’ix as to the objects of her bounty; but it is equally true that no suggestions were made by any one who is provided for in the will, and that -all the provisions are in conformity with the directions given by the testatrix herself. Her declarations, her recollection of money she-had paid two of her servants, and of grain gotten by anothei’, occuring whilst the will was being prepared, show that she was of disposing mind and memory, down to within a few moments of the execution of the will. When the various provisions were read over to her, she was raised in her bed and signed her name without hesitation or serious difficulty. There is nothing, certainly nothing positive or reliable, to show that at that time, or at the time of the attestation of the witnesses, she was not fully conscious of all that was being done by herself and them.
*105 It is unnecessary however to enter into a minute discussion of the evidence. Upon well settled principles the jury were the proper judges of the weight and credit due to the testimony of the witnesses, and their verdict when sanctioned by the two judges who heard the evidence, is entitled to the highest respect in this court. In such case the deviation from the proof must be very plain and palpable to warrant the interference of an appellate court. Jessee v. Parker’s adm’rs, 6 Gratt. 57; Greer v. Greer’s adm’r, 9 Gratt. 330; Dudleys v. Dudley’s adm’r, 3 Leigh 471, 484.
The next point for consideration is the question of the due execution of the instrument. Upon this point, as upon that of the testamentary capacity, the decision of the lower court is of course entitled to the greatest respect; but the force of that consideration is much diminished by the fact that the verdict and judgment in the County court were reversed by the circuit judge upon the question of the formal execution of the will. The matter is therefore before us in a great measure •unaffected by the weight generally due to the opinion of the trying court.
Our statute prescribes that the witnesses shall subscribe the will in the presence of the testator; but no form of attestation shall be necessary. The cases do not very accurately define what is meant by the phrase “in the presence of the testator.” Upon this subject the judges of this court have held very conflicting opinions. Neil et als v. Neil, 1 Leigh 6; Moore v. Moore’s ex’or, 8 Gratt. 307; Sturdivant v. Birchett, 10 Gratt. 67; Nock v. Nock’s ex’ors, 10 Gratt. 106.
But whatever may have been the conflict of opinion upon other points, it is well settled that though the attestation of the witnesses is in a different room, and even in a different house, it is good as being in the *106 presence of the testator, if within the range of his. vision, so that he might have seen it. It is not necessary that he should actually have seen the attestation. It is sufficient that he might have seen it if he chose to do so. Casson v. Dade, 1 Bro. C. C. 69.
Another rule is equally well settled; and that is when the attestation is in the same room with'the testator, it is presumed to have been made in his presence until it appears that he could not have seen it. If the witnesses to the will are dead, or if there is a failure of recollection on their part, the court will often presume (the will being in other respects regular) that the requirements of the statute have been complied with in the formal execution of the instrument. Such presumptions are absolutely essential to the protection of property and the security of titles. Were it otherwise the most important and solemn instruments would often fail to take effect bv the death, or from the mere failure of attesting witnesses—real or assumed—to recall each and every formality presented for the execution of testamentary papers.
Bearing these principles in mind, we may easily determine whether the paper ■ offered as a will is sufficiently proved to justify its admission to pi’obate* There are three subscribing witnesses. It is certain that one of them did sign, and another did not sign, in the presence of the testatrix. The real difficulty is in respect to the third witness. This witness is Dr* Zehmur, the attending physician, and the draftsman of the will. He went out of the room in which the testatrix was lying into a porch, and from the porch into-the dining room, where there was a table, upon which he wrote the will. He then returned to the sick room with the pen and ink and paper in his hand. The testatrix having signed in the presence of the witnesses, *107 one of those then went into the porch out of the range of the testatrix’s vision, and subscribed her name; the second signed while standing in the doorway, with the paper resting upon the door-facing. Where then did Dr. Zehmur make his attestation? His statement is, “I cannot tell where I signed the will. I thought I signed -it at the side table; that was more convenient than anything I saw in the room. Until I came here I thought I signed first of the witnesses; but I find that I signed last.” Again he says: “I can’t say whether I was in or out of the room when I signed the will. My impression is, that I was in the room.” It is impossible to read the testimony of this witness without feeling that the witness had originally a very strong conviction upon his mind that he had subscribed the will in the same room with the testatrix. This conviction, it is obvious, was not in any degree lessened by his own reflections, but.by the statements of others; conversations and discussions doubtless occurring in his presence before the trial in the Circuit court. The evidence of Mrs. Hamilton, it is highly probable, had much to do in creating the doubt at the time of the trial upon the mind of the witness in respect to his locality. She says: “I think Dr. Zehmur signed either in the porch or in the dining room.” But she gives no satisfactory reason for this opinion. It is at best a mere conjecture. Again she says: “I could almost declare positively that he did not sign in the parlor.” One of the reasons assigned for this opinion is, that she and Miss Boisseau did not see / him sign, as they would, had he been in the room at the time of his attestation. It is however much more probable that their whole attention was engrossed with the dying friend before them, than the act (unimportant to them) of subscribing a paper by a witness. *108 They might, or might not, have seen the signing; it is impossible to say. The other reason given by Mrs. Hamilton for her opinion is, that there was no convenient place in the room for writing; as the only table in it was covered with vials and bottles.”
But Dr. Zehmur does not concur with Mrs. Hamilton as to the side table. He says, “I thought I signed it at the side table; that was more convenient than anything else I saw in the room.” It is apparent throughout that Dr. Zehmur, though much impressed with the somewhat positive declarations of Mrs. Hamilton, still adhered to his original convictions, that he attested the will in the room in which the testatrix was lying. And his recollection is to some extent confirmed by Mrs. Young, another witness, who says: “I saw Miss Tempe Boisseau sign her name in the door; I saw Dr. Zehmur standing at the side table in the room with pen and ink and paper in his hands.” The most just and reasonable inference from all the evidence is, that Mrs. Hamilton having signed the will in the porch, handed it to Miss Boisseau, who signed while standing in the door-way, and then delivered it to Dr. Zehmur, who signed in the room where all the parties were then present.
Be this as it may, we have here the strong impression of the subscribing witness one way, the negative testimony of another witness another way. We have the opinion of the circuit judge giving the greatest weight to the negative testimony, the verdict of the jury and the judgment of the county judge maintaining the subscribing witness, when the events were fresher in the recollection of all the witnesses. How ought an appellate court to decide under such circumstances? Surely every reasonable presumption ought to be made in favor of the proper execution *109 of the will; a will just and beneficent in all its provisions, and as to which there is not a suggestion or even a hint of fraud, undue influence, or unfair dealing.
For these reasons the judgment of the Circuit court must be reversed, and that of the County court affirmed.
Anderson, J., was in great doubt as to the sanity of the testatrix when she signed the will, and whether the witness Zehmur signed in her presence; but he yielded to the views of the court.
Judgment oe the Circuit court reversed; and JUDGMENT OE THE COUNTY COURT AEEIRMED.